UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE RODRIGUEZ,<br>Plaintiff,<br>v.<br>WEBER GENERAL ENGINEERING, INC.<br>Defendant. | Case No. 2:26-cv-2563-JDP<br><br>ORDER |

Plaintiff Jose Rodriguez filed action in state court against his former employer, defendant Weber General Engineering, Inc., alleging discrimination, harassment, retaliation, wrongful termination, and violations of California Labor Code. Plaintiff has filed a motion to remand. ECF No. 7. Defendant has filed a motion to dismiss, ECF No. 4, and a motion to compel arbitration, ECF No. 5. For the reasons stated below, plaintiff's motion is denied, defendant's motions are granted, and this case is stayed pending arbitration.

**Background**

The following allegations are taken from the complaint and, for purposes of this order, are assumed to be true. In September 2019, plaintiff began his employment with defendant as a construction laborer. ECF No. 1-3 ¶ 8. Plaintiff is a member of a construction trade union, which referred plaintiff to defendant. *Id.* Plaintiff is protected by a collective bargaining agreement

("CBA"). *Id.* ¶ 10. Despite's plaintiff's "strong work ethic" and quality performance, defendant "systemically violated his rights as an employee through a pattern of wage theft, unsafe working conditions, harassment, and retaliation that persisted throughout his employment and ultimately led to his wrongful termination in May 2023." *Id.* ¶ 11.

Although plaintiff "was required to arrive at the jobsite 30 to 45 minutes before his official start time in order to put on his personal protective equipment" and then "walk one to two miles from the parking area to reach [the foreman]," he was not paid for this time. *Id.* ¶ 12. Once per week, plaintiff was required "to arrive even earlier an additional 30 minutes before the normal early arrival in order to direct incoming delivery trucks and coordinate with vendors before the rest of the crew arrived." *Id.* ¶ 13. Moreover, after plaintiff "clocked out or signed his timecard, he was routinely required to perform cleanup duties, secure equipment, lock gates, sweep streets, and perform other jobsite closure tasks that took approximately 30 minutes per day." *Id.*

In August 2022, plaintiff was injured at work and later diagnosed with a hernia. *Id.* ¶ 15. When plaintiff told the foreman about the diagnosis, the foreman "told him that if he took time off, [the foreman] would lay him off." *Id.* As a result, plaintiff delayed having the surgery until after he was terminated. *Id.* Additionally, defendant "failed to provide meal and rest breaks[,] and actively prevented [plaintiff] from taking them while simultaneously falsifying records to make it appear that breaks had been provided." *Id.* ¶ 16. Defendant also failed to pay plaintiff wages owed and provide accurate wage statements. *Id.* ¶ 19.

Moreover, defendant failed to reimburse plaintiff "for necessary business expenses incurred in the course of his employment," such as tools, safety equipment, and the use of plaintiff's personal vehicle. *Id.* ¶ 21. Defendant required plaintiff "to remain on call and available for work assignments without compensation." *Id.* ¶ 24. Defendant also failed to provide safe working conditions, forcing plaintiff to work in "temperatures exceeding 90 to 100 degrees" without "clean, cold drinking water." *Id.* ¶ 25.

Defendant also treated its Hispanic employees, including plaintiff, differently than it did its white employees. *Id.* ¶ 30. On several occasions, the foreman yelled at Hispanic employees to resume working "while allowing the white employees to continue their break." *Id.* The foreman

would also call plaintiff and other Hispanic employees "derogatory names" but "never spoke to the white employees in the manner that he spoke to the Hispanic employees." *Id.*

In February 2023, plaintiff "requested and received pre-approved time off to visit family members" later that month. *Id.* ¶ 31. "However, shortly before his scheduled time off, [the superintendent] informed [plaintiff] that the company needed him to forego his trip and come to work during his approved vacation." *Id.* When plaintiff said he would not work during his approved vacation, the foreman told plaintiff that "if he took his pre-approved time off, the company had made plans to fire him in retaliation." *Id.* Plaintiff took the approved vacation. *Id.* "Upon his return from the February 2023 leave, [plaintiff] found that his work hours had been dramatically reduced" such that "he was now rarely given work." *Id.* ¶ 32. Plaintiff sporadically received work over the following months. *Id.* ¶¶ 33-34.

In May 2023, plaintiff was assigned to perform caulking work "despite having verbally informed both [the foreman and the superintendent] that he had never performed caulking work before and had received no training." *Id.* ¶ 34. The foreman "admitted that he himself had never done caulking either, briefly demonstrated the task, and told [plaintiff] 'it's easy,' then directed him to proceed without any formal training or safety briefing." *Id.* A contractor later complained about the quality of the caulking work performed by plaintiff. *Id.* ¶ 35. A few days later, after not being assigned further work, the foreman called plaintiff to terminate his employment, telling him that "no one wants to work with you because you're slow." *Id.* ¶ 36.

**Procedural History**

In May 2026, plaintiff filed suit in Solano County Superior Court, bringing thirteen claims based in state law, including discrimination, harassment, retaliation, wrongful termination, and violations of the California Labor Code.[1] *Id.* at 4-5. In July 2026, defendant removed this action. ECF No. 1. On August 3, 2026, defendant simultaneously filed a motion to dismiss two claims, ECF No. 4, and a motion to compel arbitration of six claims, ECF No. 5. Plaintiff was required to file an opposition or statement of non-opposition by August 17, 2026. *See* E.D. Cal. L.R. 230(c).

---

[1] The parties have consented to magistrate judge jurisdiction. ECF No. 8.

Plaintiff did not comply with that requirement.

On August 21, 2026, plaintiff filed a motion to remand. ECF No. 7. On September 4, 2026—more than two weeks after the deadline to oppose defendants' motions—plaintiff filed an opposition to defendant's motion to dismiss, ECF No. 11, and an opposition to defendant's motion to compel arbitration, ECF No. 12. Notably, plaintiff's only argument against either motion is that, for the reasons explained in his motion to remand, the court is without jurisdiction to grant defendant's motions. *See generally* ECF Nos. 11 & 12. Plaintiff does not address the merits of either motion. Under these circumstances, the court deems defendant's motions unopposed.

Also on September 4, 2026, defendant timely opposed plaintiff's motion to remand. ECF No. 10. Plaintiff has not filed a reply in support of his motion, and the deadline for doing so has passed. *See* E.D. Cal. L.R. 230(d).

**Motion to Remand**

**A. Legal Standard**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district . . . where such action is pending." 28 U.S.C. § 1441(a). Courts construe the removal statute against removal, and the party seeking removal bears the burden of establishing federal jurisdiction. *Geographic Expeditions, Inc. v. Est. of Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992)). If removal was improper, "the district court lack[s] subject matter jurisdiction and the action should [be] remanded to the state court." *Toumajian v. Frailey*, 135 F.3d 648, 653 (9th Cir. 1998) (citing 28 U.S.C. § 1447(c)).

The notice of removal must contain "a short and plain statement of the grounds for removal," which includes the claimed jurisdictional basis. 28 U.S.C. § 1446(a). The presence or absence of federal question jurisdiction "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392

(1987). "A corollary to the well-pleaded complaint rule is the 'complete preemption' doctrine, which applies in cases in which 'the preemptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *In re NOS Commc'ns, MDL No. 1357*, 495 F.3d 1052, 1057 (9th Cir. 2007) (quoting *Caterpillar*, 482 U.S. at 393.).

**B. Analysis**

Defendant removed on the basis of federal question jurisdiction. ECF No. 1 at 3. Specifically, defendant argues that, because the governing CBA provides for overtime wages, plaintiff has no "independent state-law right to overtime," and thus plaintiff's claim for overtime wages pursuant to California Labor Code § 510 is preempted by Section 301 of the federal Labor Management Relations Act. ECF No. 1 at 3-4. To support its argument, defendant has filed the CBA. *See* ECF No. 1-2. In his motion to remand, plaintiff argues that Section 301 does not preempt his overtime claim. ECF No. 7 at 5-9.

The Supreme Court has held that "the preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 23 (1983) (quoting 29 U.S.C. § 185(a)). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc.*, 482 U.S. at 393 (citing *Franchise Tax Bd*., 463 U.S. at 24).

To determine if Section 301 preemption applies, courts apply a two-step inquiry. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019). First, courts "ask whether the asserted cause of action involves a right that exists solely as a result of the CBA. The essential inquiry is this: Does the claim seek purely to vindicate a right or duty created by the CBA itself? If so, then the claim is preempted, and the analysis ends there." *Id.* at 1152-53 (cleaned up). If the claim involves a right independent of the CBA, courts "proceed to the second step and ask whether a plaintiff's state law right is substantially dependent on analysis of the CBA, which turns on whether the claim cannot be resolved by simply 'looking to' versus 'interpreting' the CBA." *Id.*

at 1153 (cleaned up). "[A] state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA." *Id.*

Defendant argues that plaintiff's twelfth cause of action is preempted by Section 301. ECF No. 1 at 3-4. This claim is for failure to pay overtime wages in violation of Labor Code section 510. ECF No. 1-3 ¶¶ 122-26. Defendant argues that this claim is exempted by Labor Code section 514, which provides:

> Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Cal. Lab. Code § 514.

The Court of Appeals has held that "[b]y its terms, . . . the default definition of overtime and overtime rates in section 510 does not apply to an employee who is subject to a qualifying CBA. If [the plaintiff's] CBAs . . . meet the requirements of section 514, [the plaintiff's] right to overtime exists solely as a result of the CBA, and therefore is preempted under § 301." *Curtis*, 913 F.3d at 1153-54 (cleaned up).

Here, the CBA meets all requirements of section 514. First, the CBA "provides for the wages, hours of work, and working conditions of the employees[.]" *See* Cal. Lab. Code § 514; ECF No. 1-2 at 29-33. Second, the CBA "provides premium wage rates for all overtime hours worked." *See* Cal. Lab. Code § 514; ECF No. 1-2 at 30-32. Third, the CBA provides "a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." *See* Cal. Lab. Code § 514. As defendant points out, the 2023 minimum wage in California was $15.50. ECF No. 10 at 5 (citing Cal. Dep't of Indus. Rels., Minimum Wage Order MW-2023 (January 1, 2023), https://www.dir.ca.gov/IWC/MW-2023.pdf.). Consequently, to satisfy the final requirement of section 514, the CBA needed to provide a regular hourly rate of pay in 2023 of at least $20.15. *See id.* This requirement is satisfied, as defendant has submitted a declaration stating that plaintiff earned $34 per hour in May 2023, *see* ECF No. 1-2 at 2, and the CBA otherwise provided for wage rates exceeding $20.15 in 2023, *see id.* at 43-55.

In his motion, plaintiff argues that courts in this Circuit "have explicitly held that a defendant's reliance on Labor Code section 514 is an ***affirmative defense*** to an employee's claim of unpaid overtime and does not establish preemption under Section 301." ECF No. 7 at 7-8 (emphasis in original). However, plaintiff only cites cases that predate *Curtis*. *See id*. at 8. As established above, the Court of Appeals has rejected plaintiff's argument and established that, where a CBA meets the requirements of section 514, a plaintiff's right to overtime "exists solely as a result of the CBA, and therefore is preempted under § 301" such that it gives rise to federal question jurisdiction. *Curtis*, 913 F.3d at 1154 (cleaned up). In its opposition, defendant pointed out plaintiff's omission and established that all requirements of section 514 are satisfied by the CBA. ECF No. 10 at 5-8. As noted, plaintiff has not filed a reply, and the deadline for doing so has passed.

Because plaintiff's section 510 claim is exempted by section 514, his right to overtime wages "exists solely as a result of the CBA[.]" *See Curtis*, 913 F.3d at 1154 (cleaned up). As such, "the claim is preempted, and the analysis ends there." *See id*. at 1153 (cleaned up). The court has federal question jurisdiction over the twelfth cause of action, and the court has supplemental jurisdiction over all other claims. *See* 28 U.S.C. § 1367(a).

Accordingly, plaintiff's motion to remand, ECF No. 7, is denied.

## Motion to Dismiss

### A. Legal Standard

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when a plaintiff "pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In assessing the sufficiency of the pleadings, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* at 664. Those facts must be sufficient to push the claims "across the line from conceivable to plausible." *Id.* at 683. Ultimately, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

**B. Analysis**

Defendant moves to dismiss two claims as untimely. ECF No. 4-1 at 6-7. First, defendant seeks dismissal of plaintiff's sixth cause of action for wrongful termination in violation of public policy. *Id.* at 6; *see also* ECF No. 1-3 ¶¶ 88-93. California courts have held that, under California Code of Civil Procedure § 335.1, the statute of limitations for this claim is two years. *Prue v. Brady Co./San Diego*, 242 Cal. App. 4th 1367, 1382 (2015). As noted, plaintiff alleges that he was terminated on May 22, 2023, but he did not initiate this action until May 22, 2026. *See* ECF No. 1-3 ¶ 36. As such, the sixth cause of action is untimely.

Second, defendant seeks dismissal of plaintiff's tenth cause of action for intentional infliction of emotional distress. ECF No. 4-1 at 7. This claim is based on defendant's conduct leading up to and including terminating plaintiff. ECF No. 1-3 ¶¶ 112-17. A claim for intentional

infliction of emotional distress is also governed by California Code of Civil Procedure § 335.1 such that it carries a two-year limitations period. *Pugliese v. Superior Ct.*, 146 Cal. App. 4th 1444, 1450 (2007). As such, the tenth cause of action is untimely.

As defendant points out, "[t]he Complaint pleads no facts showing that Defendant induced delay, that another proceeding was a prerequisite to these claims, or that Plaintiff was otherwise unable to file [the claims] within two years." *See* ECF No. 4-1 at 7. As noted, plaintiff's opposition argues only that the court is without jurisdiction to dismiss the claims for the reasons stated in plaintiff's motion to remand. *See* ECF No. 11 at 4-8. However, as established above, the court has jurisdiction over this action. Given that finding, plaintiff has no argument against defendant's motion; indeed, he does not even address the merits of defendant's argument or otherwise argue that either claim is timely. *See id*.

Accordingly, defendant's motion to dismiss, ECF No. 4, is granted. Because the sixth and tenth causes of action are time-barred, the court finds that amendment would be futile and therefore dismisses these claims without leave to amend. *See Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1103 (9th Cir. 2018) (holding that "leave to amend need not be granted when any amendment would be an exercise in futility, such as when the claims are barred by the applicable statute of limitations") (cleaned up).

**Motion to Compel Arbitration**

**A. Legal Standard**

Congress created the Federal Arbitration Act ("FAA") to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate . . . . and place such agreements upon the same footing as other contracts." *Volt Info. Scis, Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 474 (1989). Under the FAA, a party to a valid arbitration agreement may "petition any United States district court . . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In weighing whether an arbitration agreement should be enforced, "the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue. If the answer is yes to both questions, the court must enforce the agreement." *Lifescan v.*

*Premier Diabetic Services, Inc.*, 363 F.3d 1010, 1012 (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

**B. Analysis**

Defendant moves to compel arbitration of the seventh, eighth, ninth, eleventh, twelfth, and thirteenth causes of action. ECF No. 7-9. The CBA includes an arbitration clause. ECF No. 1-2 at 21. In addition to "[a]ny dispute concerning the interpretation or application," all claims arising under the California Labor Code and California Business and Professions Code § 17200 are subject to arbitration. ECF No. 1-2 at 21, 23. Plaintiff's seventh, eighth, ninth, and eleventh causes of action arise under the California Labor Code. *See* ECF No. 1-3 ¶¶ 94-111, 118-34. Plaintiff's thirteenth cause of action arises under California Business and Professions Code § 17200. *See id.* ¶¶ 127-34. Lastly, as established above, plaintiff's twelfth cause of action for overtime wages is governed by the CBA. *See id.* ¶¶ 122-26.

As such, the court finds that an arbitration agreement exists and that it encompasses the claims identified above. *See Lifescan*, 363 F.3d at 1012. Plaintiff's opposition argues only that the court is without jurisdiction for the reasons stated in plaintiff's motion to remand. *See* ECF No. 12 at 4-10. Plaintiff has no argument against defendant's motion on the merits. *See id.*

Accordingly, defendant's motion to compel arbitration, ECF No. 5, is granted. Plaintiff is compelled to arbitrate the seventh, eighth, ninth, eleventh, twelfth, and thirteenth causes of action in the complaint, ECF No. 1-3.

Lastly, defendant asks the court to stay this action as to all claims and that the parties be directed to "submit joint status reports every 120 days and within fourteen days after completion of arbitration." ECF No. 5-1 at 13. Plaintiff does not address this request. *See generally* ECF No. 12. The court agrees and finds that, in the interests of judicial economy and the parties' allocation of resources, it is proper to stay this action pending arbitration of the above-identified claims. *See ATSA of California, Inc. v. Cont'l Ins. Co.*, 702 F.2d 172, 176 (9th Cir. 1983) (holding that where a court compels arbitration of certain claims, the court "has authority to stay proceedings in the interest of saving time and effort for itself and litigants").

## Conclusion

Accordingly, it is ORDERED that:

1. Plaintiff's motion to remand, ECF No. 7, is DENIED.

2. Defendant's motion to dismiss, ECF No. 4, is GRANTED. Plaintiff's sixth and tenth causes of action in the complaint, ECF No. 1-3, are DISMISSED without leave to amend.

3. Defendant's motion to compel arbitration, ECF No. 5, is GRANTED. Plaintiff is compelled to arbitrate the seventh, eighth, ninth, eleventh, twelfth, and thirteenth causes of action in the complaint, ECF No. 1-3.

4. This case is STAYED pending arbitration.

5. The parties shall file a joint status report (1) every 120 days apprising the court of the status of arbitration and (2) within fourteen days after completion of arbitration.

IT IS SO ORDERED.

Dated: October 14, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE